# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 12-6034

———

| | | |
|---|---|---|
| In re:  Shawn C Copeland; | * | |
| Lauren MK Copeland, | * | |
| | * | |
| Debtors, | * | |
| | * | |
| Shawn C Copeland; | * | |
| Lauren MK Copeland, | * | Appeal from the |
| | * | United States |
| Debtors - Appellants, | * | Bankruptcy Court for the |
| | * | Western District of Missouri |
| v. | * | |
| | * | |
| Richard V. Fink, | * | |
| | * | |
| Trustee - Appellee. | * | |

———

Submitted: October 23, 2012
Filed: November 20, 2012

———

Before KRESSEL, Chief Judge, SCHERMER and NAIL, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

The Debtors, Shawn C Copeland and Lauren MK Copeland (the "Debtors"), appeal from the order of the bankruptcy court[1] confirming their amended Chapter 13 plan. We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

**ISSUE**

The issue in this appeal is whether the bankruptcy court erred when it confirmed the Debtors' amended Chapter 13 bankruptcy plan (over the Debtors' objection) that did not provide for payment of unsecured non-priority tax claims and tax preparation fees ahead of other non-priority unsecured creditors. Because a plan proposed by the Debtors providing for special treatment of the tax claims would unfairly discriminate against other unsecured non-priority creditors, we hold that the bankruptcy court's confirmation of the Debtors' plan was proper.

**BACKGROUND**

On April 22, 2011, the Debtors filed a petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). Taxing authorities hold unsecured non-priority claims in the Debtors' bankruptcy case.[2] Because of the age of the tax debt and the tardy filing of tax returns for pre-petition years, the tax debt is non-priority debt and a substantial portion of it is non-dischargeable.

---

[1] The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri. The Honorable Arthur B. Federman, Chief United States Bankruptcy Judge for the Western District of Missouri and and the Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri, held hearings and overruled objections by the Debtors to confirmation of their own Chapter 13 plan. The rulings of Judge Federman and Judge Dow both led to the order of confirmation entered by Judge Venters.

[2] The Debtors state that the taxing authorities also filed secured and priority unsecured proofs of claims in the Debtors' case. Only the unsecured non-priority claims are relevant to our discussion.

The Debtors filed a plan that stated that "[t]he general unsecured claims of the United States for the Internal Revenue Tax, the Missouri Department of Revenue, and the Kansas Department of Revenue for income taxes shall be treated as a Special Class to be paid 100 percent." The plan also provided that "Debtors' attorney is to be paid for tax return preparation from plan payments." The tax preparation fees result from counsel's post-petition preparation of tax returns. The bankruptcy court denied confirmation of the plan.[3]

In February 2012, the Debtors amended their plan to remove the provisions for special classification of unsecured non-priority tax claims and plan payments to the Debtor's attorney for tax preparation fees. The Debtors objected to confirmation of their own plan because it did not provide for the special treatment of unsecured non-priority tax creditors and tax preparation fees, as provided in the Debtors' previous plan.

At a hearing on the Debtors' objection to confirmation of their February 2012 plan, the Debtors stated that they wanted to pay the unsecured non-priority tax claims in full and their tax preparation fees "from the DIP." Citing to *Groves v. LaBarge (In re Groves),* 39 F.3d 212 (8th Cir. 1994), Richard V. Fink, Chapter 13 trustee (the "Trustee"), argued that it was unfair discrimination under Bankruptcy Code §1322 for the Debtors to provide special treatment to the tax creditors simply because such creditors' claims were non-dischargeable. The Debtors argued that it would not be unfair to afford special treatment to the tax creditors because the tax creditors are required to continue performing services for the Debtors. The bankruptcy court stated that the arguments made by the Debtors "don't provide a basis for treating the taxing authorities different from unsecured creditors" and, basing its decision on

---

[3]     The bankruptcy court also denied confirmation of other forms of the Debtors' plan, but no ground for denial of confirmation, other than those discussed by us in this decision, is relevant to this appeal.

*Groves*, stated that "the plan would provide for unjust discrimination if it allowed the unsecured non-priority tax claims to be paid ahead of the other unsecured creditors, that the pot should be available for all the unsecured creditors." The bankruptcy court overruled the Debtors' objection to confirmation. No confirmation order was entered.

In April 2012, the Debtors amended their plan (the "Final Plan") to make a change to it that is not relevant to this appeal, but they retained the equal treatment of all unsecured creditors from the Debtors' February 2012 plan including the tax creditors and tax preparation fees. The Debtors objected to confirmation of the Final Plan on the same grounds that they had previously objected to confirmation of the February 2012 plan. At a hearing, the bankruptcy court stated that the issues before it had already been ruled upon at the previous hearing, and it overruled the Debtors' objection to confirmation of their Final Plan. On May 10, 2012, the bankruptcy court entered its order confirming the Final Plan.

The Debtors' Chapter 13 Plan is a Disposable Income Pot - 60 month plan. The Trustee estimated that, based on claims that had been filed, the Final Plan would provide for a distribution of approximately 78% to all unsecured non-priority creditors.[4] The Trustee further submitted that, if the Debtors were permitted to pay the tax claims ahead of other unsecured non-priority creditors, the tax creditors would

---

[4] After the deadline for filing proofs of claims in the Debtors' case, the Debtors settled an adversary proceeding "striping off" a lender's junior mortgage lien. The Agreed Judgment in the adversary proceeding stated that the lender "shall be entitled to" an allowed unsecured non-priority claim. The Agreed Judgment was signed and entered on the docket in December 2011, but the lender had not filed a proof of claim as of the date this case was submitted to us.

receive a distribution of approximately 97%.[5] The remaining unsecured non-priority creditors would receive nothing.[6]

## STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*. *Lange v. Mutual of Omaha (In re Negus-Sons, Inc.)*, 460 B.R. 754, 755 (B.A.P. 8th Cir. 2011) (citation omitted). The standard of review on the issue of whether the Debtors' proposed classification discriminated unfairly is not clear. *See Groves,* 39 F.3d at 214 ("[*Mickelson v. Leser (In re Leser)*, 939 F.2d 669,671 (8th Cir. 1991)] treated the issue as 'solely one of legal interpretation,' . . . [b]ut in *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1313 (8th Cir. 1987), we noted 'the broad discretion of bankruptcy courts in matters of classification,' and reviewed a classification issue under the clearly erroneous standard . . . ."). In some instances, the inquiry is "primarily one of statutory construction, to be reviewed *de novo* [, b]ut application of the 'discriminate unfairly' standard in other cases may involve little more that exercise of the bankruptcy court's broad discretion." *Groves,* 39 F.3d at 214. Regardless of whether we review the bankruptcy court's decision *de novo* or for an abuse of discretion, our conclusion is the same.

---

[5] The Trustee stated that this percentage does not account for payment of tax preparation fees.

[6] It is ambiguous as to whether the Debtors' request for payment of their tax preparation fees is a priority or a non-priority claim. The Debtors' previous plan simply states that the tax preparation fees "will be paid from plan payments out of the DIP [disposable income pot] pool." We do not need to resolve this ambiguity because the bankruptcy court correctly noted the unfair discrimination in the unsecured claim classification.

## DISCUSSION

The Debtors had standing to bring this appeal from an order confirming their Chapter 13 Final Plan. *See Zahn v. Fink (In re Zahn)*, 526 F.3d 1140, 1141 (8th Cir. 2008)(debtor had standing to appeal from an order confirming her own plan).

### A.   11 U.S.C. §1322(b)(1)

Section 1322(b)(1) of Title 11 of the United States Code (the "Bankruptcy Code") permits a Chapter 13 plan to "designate a class or classes of unsecured claims, as provided in section 1122 of [the Bankruptcy Code], but [it] may not discriminate unfairly against any class so designated. . . ."   "A Chapter 13 . . . plan of reorganization may place unsecured claims in separate classes 'as long as the classification 1) complies with section 1122 of the [Bankruptcy] Code and 2) does not result in unfair discrimination between the claims grouped separately.' " *Groves*, 39 F.3d at 214 (quoting *Leser*, 939 F.2d at 671)).

The Trustee contends, and we agree, that the Debtors' proposed classification of the tax claims would unfairly discriminate against the other unsecured creditors in violation of §1322(b)(1).  The Debtors bear the burden of proving that their Final Plan does not unfairly discriminate against unsecured creditors.  *Groves*, 39 F.3d at 214.

### B.   Unfair discrimination

We apply a four-part test adopted in this Circuit for determining whether the Debtors' separate classification of the tax debt resulted in unfair discrimination, examining:

(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Lesser*, 939 F.2d at 672 (citations omitted).

Although the two cases concern different types of non-dischargeable debt, this case is similar in many respects to the Eighth Circuit's *Groves* case. 39 F.3d 212. In *Groves*, the court disallowed the debtor's request to provide discriminatory treatment to non-dischargeable student loan debt. The *Groves* court agreed with the determination by the lower courts "that the nondischargeability of student loan claims, by itself, does not justify substantial discrimination against other, dischargeable unsecured claims in a Chapter 13 plan." Unsatisfactory to the *Groves* court were arguments by the debtor that public policy concerns made it appropriate to separately classify and pay student loan debt in full through a Chapter 13 plan. The *Groves* student loan creditors were to receive 100% payment under the debtor's proposed plan, while other unsecured creditors would receive, at most, 40% of their claims. Here, the Debtors' plan would pay the tax claims 97% and other unsecured claims 0%.

According to the Debtors, their reason for the proposed discrimination is to prevent punishment of the tax creditors. The Debtors state that "[w]hile [Debtors] are at fault for not timely filing their tax returns, the taxing authorities are not." Focusing on the obligation of taxing authorities to continue performing their services (in contrast to other creditors who can discontinue providing goods or services to a debtor), the Debtors argue for "the public policy of maximum tax collection as the basis for favorable treatment of general unsecured tax claims."

The public policy argument of the Debtors seems to be a request (like a request by the debtor in *Groves*) that we extend to the Debtors' plan the Eighth Circuit's rationale in *Leser*. 939 F.2d 669. Citing to the lower court's public policy concerns for full payment of support of children, the *Leser* court affirmed the confirmation of a Chapter 13 plan that gave special treatment to claims for unsecured non-priority non-dischargeable child support. *Id*. The interest in collecting taxes as advanced by the Debtors is simply not comparable to the public policy in favor of ensuring that child support is paid. *See Groves,* 29 F.3d at 215 (disallowing the debtor's request to liken public policy in favor of paying child support in full through plan as allowed in *Leser* with payment of student loan debt). The Debtors provided nothing to convince the bankruptcy court or us that the tax creditors deserve special treatment.

Regardless of the Debtors' stated purpose for the discrimination and in light of the fact that we do not accept the Debtors' public policy rationale, it is evident (as the bankruptcy court implicitly determined) that the reason for the Debtors' proposed special treatment of the tax claims is because of the non-dischargeable nature of most of such debt. Standing alone, the non-dischargeability of a debt is not a proper basis for discrimination against other unsecured non-priority claims. *Groves*, 39 F.3d at 216 (non-dischargeability of student loan debt alone is not enough to justify discrimination against other unsecured creditors).

We also note that none of the tax creditors objected to confirmation of the Debtors' Final Plan, a plan that the Debtors claim unfairly punishes those same creditors. The Trustee estimated that the tax creditors (together with other unsecured non-priority creditors) will receive payment of 78% of their unsecured non-priority claims under the Final Plan. And the tax creditors' rights are protected without special treatment because these creditors can pursue payment of the non-dischargeable debt after the completion of the Debtor's bankruptcy case. We reject an argument by the Debtors that the delay in collecting the non-dischargeable tax debt should change the outcome. *See Groves*, 39 F.3d 212 (delay in collection of non-

dischargeable debt was not a consideration of court when disallowing special treatment for non-dischargeable student loan debt).

The Debtors do not deny that they are able to carry out a plan without the discrimination. And there is no suggestion otherwise. The Debtors' Final Plan was confirmed by the bankruptcy court and the Debtors have not contested the Trustee's assertion that the Debtors have been making payments under their Final Plan. There is no requirement, based on public policy or otherwise, to pay the unsecured non-priority non-dischargeable tax claims in full through the plan. *See Groves*, 39 F.3d 215 (public policy did not require payment of student loan debt in full under plan and there was nothing else mandating such payment). The Debtors express dissatisfaction with the four-part test adopted in *Leser*, arguing that application of it (particularly the inquiry regarding whether a debtor can carry out a plan without the discrimination), should be reconsidered. We are bound to follow the test adopted in *Leser*.

Like in *Groves,* the plan the Debtors seek improperly puts the Debtors' desire for a fresh start significantly ahead of the interests of the other creditors. *See Groves*, 39 F.3d 215 (significantly better treatment of non-dischargeable debt "more than overbalance[d] the debtors' desire for a clean sale as against fairness to their general unsecured creditors.") (quoting district court's analysis in same case) (quotation marks omitted).

By asking for special treatment of their tax claims, the Debtors ask their other unsecured non-priority creditors to pay for the Debtors' failure to file timely tax returns. *See Groves v. LaBarge (In re LaBarge),* 160 B.R. 121, 123 (E.D. Mo. 1993) (quoting *In re Saulter,* 133 B.R. 148, 149 (Bankr. W.D. Mo. 1991)) ("to allow discrimination solely on the basis of non-dischargeability enables the debtor  . . . . '[i]n essence . . . [to] shift [ ] the student loan non-dischargeabilty burden from herself onto her general unsecured creditors.' "), *aff'd* 39 F.3d 212. The bankruptcy court

properly held that such treatment unfairly discriminates against the other unsecured non-priority creditors.

## CONCLUSION

The decision of the bankruptcy court is AFFIRMED.

---